The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate award.
The undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on July 22, 1993, two Supplemental Agreements as to Payment of Compensation, approved by the Industrial Commission on April 22, 1993 and August 6, 1993, a Pre-Trial Agreement, and at the initial hearing as
STIPULATIONS
1. On August 14, 1991, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer.
3. On that date, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
4. Plaintiff's average weekly wage was $394.59.
5. As a result of her back injury on August 14, 1991, plaintiff received temporary total disability compensation from December 21, 1992 to February 28, 1993; temporary partial disability compensation from March 1, 1993 to May 2, 1993; and permanent partial disability compensation from May 3, 1993 to October 9, 1994
6. Plaintiff received short term disability benefits from July 21, 1993 through January 18, 1994. These benefits, which totaled $4,899.21, were paid from a disability plan funded solely by defendant-employer.
7. A set of plaintiff's medical records received from plaintiff's counsel on September 27, 1995 is admitted into evidence.
8. Copies of three check stubs, collectively marked as Stipulated Exhibit Number Two, are admitted into evidence.
9. An Industrial Commission Form 28B, marked as Stipulated Exhibit Number Three, is admitted into evidence.
EVIDENTIARY RULINGS
The objections appearing in the depositions of Dr. Whitehurst and Dr. Leibelt are OVERRULED.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner with minor technical modifications, as follows:
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff, a divorced female, was the mother of two children. Plaintiff completed high school and attended a technical college before beginning work. Plaintiff began working for defendant-employer's predecessor in 1981. On August 14, 1991, while performing her usual duties for defendant-employer, plaintiff sustained an injury to her back.
2. Following her injury, plaintiff experienced low back pain with periodic radiation into her buttocks and left leg. Plaintiff underwent a lengthy course of conservative treatment which failed to improve her symptoms. On December 23, 1992, Dr. Whitehurst performed a one level fusion at L5-S1, with insertion of Steffie plates and screws.
3. On March 1, 1993, plaintiff returned to work for defendant-employer on a part-time basis. Upon returning to work, plaintiff began working as a visual operator, a sedentary position in which the employee uses a microscope to inspect parts. Plaintiff continued working as a part-time visual operator until May 3, 1993, when she began working her usual eight-hour shift. Dr. Whitehurst approved of plaintiff's full-time employment as a visual operator.
4. While working on a part-time basis, plaintiff was paid temporary partial disability compensation. Upon returning to full-time employment, plaintiff began receiving permanent partial disability compensation, which continued through October 9, 1994.
5. During her last evaluation by Dr. Whitehurst on June 7, 1993, plaintiff related that she was satisfied with her position as a visual operator and that she was pain free. Defendants received Dr. Whitehurst's office note from that date on June 25, 1993. Prior to her evaluation on June 7, 1993, plaintiff continued having and complaining of low back pain. Plaintiff's post-surgical pain was of a different nature and in a different location than her pre-surgical pain. Plaintiff's post-surgical pain was exacerbated by activity.
6. On June 30, 1993, plaintiff presented to Kaiser Permanete complaining of low back pain. Plaintiff was examined by a physician's assistant who excused plaintiff from work through July 14, 1993. Defendants knew of plaintiff's June 30, 1993 evaluation and her excuse from work thereafter. Defendants provided plaintiff with a form with which to apply for short term disability benefits.
7. On August 13, 1993, plaintiff presented to Dr. Leibelt upon referral by Kaiser Permanente. Defendants were aware of the referral to Dr. Leibelt. On the date of Dr. Leibelt's initial evaluation, plaintiff had pain in her low back and right leg. As a result of her pain, plaintiff was excused from work.
8. Plaintiff continued to receive treatment from Dr. Leibelt through November 4, 1993, when Dr. Leibelt performed surgery to remove plaintiff's Steffie plates and associated hardware and to decompress the nerve roots at L6. Following her surgery, plaintiff's pain diminished and her overall condition improved. Defendant-employer did not offer plaintiff employment suitable to her condition following her second surgery.
9. On July 1, 1993, plaintiff sustained a substantial change in her physical condition affecting her wage earning capacity.
10. On April 1, 1995, plaintiff returned to work for a different employer as a telephone operator. Plaintiff's position as a telephone operator was a light duty position and was suitable to her physical capacity to perform sedentary work.
11. As a result of her change of condition, plaintiff was incapable of earning wages from defendant-employer or any other employer from July 1, 1993 through April 12, 1995, when she returned to work for another employer earning an average weekly wage of $243.00.
12. As a result of her change of condition, plaintiff's capacity to earn wages was diminished by $151.59 per week from April 13, 1995 through the date of the hearing in this matter.
13. During the period that plaintiff was incapable of earning wages, she received unemployment benefits totaling $1,752.00.
14. As a result of her change of condition, plaintiff sustained an additional five per cent impairment of her back.
* * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On July 1, 1993, plaintiff sustained a substantial change of her physical condition affecting her capacity to earn wages. N.C. Gen. Stat. § 97-47.
2. As a result of her change of condition, plaintiff is entitled to payment of temporary total disability compensation at the rate of $263.07 per week from October 10, 1994 through April 15, 1995. N.C. Gen. Stat. § 97-29.
3. As a result of her change of condition, plaintiff is entitled to payment of temporary partial disability compensation at the rate of $101.07 per week from April 13, 1995 and continuing for three hundred weeks from August 14, 1991, less the number of weeks during which plaintiff received temporary total disability compensation, or until order of the Industrial Commission allowing defendants to cease payment of temporary partial disability compensation. N.C. Gen. Stat. § 97-30; Brown v. Public WorksCommission, ___ N.C. App. ___, ___ S.E.2d ___ (No. COA95-751, filed 21 May 1996). Plaintiff was entitled to the election of her more favorable remedy between this and her additional five per cent permanent partial disability, which would appear to be the ongoing payments of temporary partial disability.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of her change of condition on July 1, 1993 for so long as such examinations, evaluations, and treatments tend to effect a cure, give relief, or will tend to lessen her disability. N.C. Gen. Stat. § 97-2(19); N C. Gen. Stat. § 97-25.
5. Defendants are entitled to a credit of $6,652.21 against the disability compensation due plaintiff.
* * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $263.07 per week from October 10, 1994 through April 12, 1995. This amount shall be paid in a lump sum, subject to the credit due defendants under Paragraph 4 and the attorney's fee approved in Paragraph 5.
2. Defendants shall pay plaintiff temporary partial disability compensation at the rate of $101.07 per week from April 13, 1995 and continuing for three hundred weeks from August 14, 1991, less the number of weeks during which plaintiff received temporary total disability compensation or until order of the Industrial Commission allowing defendants to cease payment of temporary partial disability compensation. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the credit due defendants under Paragraph 4 and the attorney's fee approved in Paragraph 5.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her change of condition on July 1, 1993 for so long as such examinations, evaluations, and treatments tend to effect a cure, give relief, or will tend to lessen her disability.
4. Defendants shall receive a credit of $6,651.21 against the disability compensation due plaintiff.
5. A reasonable attorney's fee remains and is affirmed through the Full Commission at the level of twenty-five per cent of the lump sum due plaintiff under Paragraphs 1 and 2 of this Award and shall be deducted from that amount and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
6. Plaintiff, on appeal, has asked that sanctions, pursuant to G.S. § 97-88.1, be assessed against defendants for choosing to defend this matter The undersigned, in their discretion, have determined that defendants have not defended this claim without reasonable ground and therefore DENY plaintiff's request as to attorney's fees. Defendants shall bear the other costs associated with this claim.
This case is ORDERED REMOVED from the Full Commission docket.
This the ________ day of __________ 1997.
 S/ ____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ____________ COY M. VANCE COMMISSIONER
S/ ____________ LAURA K. MAVRETIC COMMISSIONER